**ABRAXAS FOUNDATION,
INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DATEMASCH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 2, 2000.

Decided July 13, 2000.

---

Jeffrey R. Wilson, Pittsburgh, for petitioner.

Jeffrey Lundy, Punxsutawney, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Abraxas Foundation, Inc. (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board), affirming the decisions of the Workers' Compensation Judge (WCJ), granting the reinstatement petition of Harry Datemasch (Claimant) and denying and dismissing the review petition of Employer. We affirm.

Employer employed Claimant as a drug and alcohol counselor. Claimant's job duties included group and individual counseling sessions with high school students. In the course and scope of his employment on August 24, 1994, Claimant became involved in an altercation with a student and subsequently suffered a myocardial infarction, or heart attack as it is commonly referred. Claimant underwent numerous treatments, including heart catheterization and angioplasty, and was unable to work for a period of approximately two months. Claimant received total disability benefits pursuant to an agreement for compensation executed by the parties. However, this agreement for compensation also provided for a suspension of Claimant's benefits effective November 1, 1994, as Claimant returned to a modified position with Employer on this date with no loss of wages.

Upon his return to work, Claimant would occasionally experience some shortness of breath and angina. Claimant's chest pains began to intensify in August and September of 1995. Claimant again became involved in an altercation with a student in early October, 1995. As Claimant was preparing to leave work on the evening of October 11, 1995, he began to experience severe chest pain and he took a nitroglycerine pill. Claimant thereafter proceeded to drive home and go to bed, but the pain would not go away.[1] Claimant took another nitroglycerine pill, but the pill provided no relief. Claimant's wife drove Claimant to the local hospital. The local hospital transferred Claimant to Allegheny General Hospital, where Claimant underwent heart bypass surgery.

Following the surgery, Claimant continued to treat with his local physician, Dr. Robert C. Luderer, but he was unable to return to work. Claimant later filed a petition to reinstate his compensation benefits, alleging that he once again became totally disabled as a result of an October 11, 1995, incident that was causally related

---

1. It was later determined that Claimant was experiencing a second heart attack at this time.

to his initial heart attack. Employer filed an answer denying the material allegations of Claimant's petition. The case proceeded with hearings before the WCJ.

In support of his petition, Claimant testified on his own behalf. Claimant related a history of his heart attacks, including his past and present medical treatments, and his return to work. Claimant indicated that, upon his return to work, he would occasionally encounter shortness of breath and chest pains. Claimant indicated that these chest pains became progressively worse during the months of August and September of 1995. Additionally, Claimant indicated that he suffered a second heart attack on October 11, 1995, approximately one week after he being involved in a heated confrontation with a client.[2]

In further support of his petition, Claimant presented the deposition testimony of his treating physician, Dr. Luderer. Dr. Luderer is board certified in internal medicine and oncology. Dr. Luderer first came into contact with Claimant in the emergency room of the local hospital where Claimant was taken following his first heart attack and has continually treated him since that time. Dr. Luderer confirmed that, upon his return to work, Claimant informed him that he would occasionally experience chest pains and shortness of breath. In a report dated February 20, 1996, and submitted at his deposition, Dr. Luderer opined that Claimant's disease was causally related to his work environment.

When asked to explain this statement, Dr. Luderer indicated that Claimant's first heart attack was clearly causally related to the confrontation at work, whereas work-related stress, coupled with a damaged myocardium from his first heart attack, was a contributing factor to his second heart attack. More specifically, Dr. Lu-

derer indicated that Claimant's first heart attack caused significant left ventricular dysfunction. Dr. Luderer opined that Claimant was "really totally disabled" from his first heart attack but went back to work and "obviously ... couldn't take it." (R.R. at 169a). Further, Dr. Luderer opined that Claimant was presently permanently and totally disabled. On cross-examination, Dr. Luderer reiterated that work-related stress was a contributing factor to Claimant's second heart attack, but acknowledged that he could not unequivocally state that Claimant's second heart attack was related to his employment.

In opposition to Claimant's petition, Employer presented the deposition testimony of Dr. Larry E. Hurwitz. Dr. Hurwitz is board certified in internal medicine and cardiology. Dr. Hurwitz performed a physical examination of Claimant on May 1, 1995, and also reviewed Claimant's previous medical records. Dr. Hurwitz indicated that Claimant suffered from coronary artery disease and identified several factors in Claimant that caused this disease to progress.[3] Dr. Hurwitz opined that this coronary artery disease pre-existed Claimant's second heart attack and it was the progression of this disease that caused the same. Additionally, Dr. Hurwitz opined that Claimant's second heart attack was not a consequence or an exacerbation of his initial heart attack. Dr. Hurwitz did, however, acknowledge that Claimant's initial heart attack on August 24, 1994, was caused by the confrontation at work and that this heart attack permanently damaged Claimant's heart muscle tissue.

Ultimately, the WCJ issued a decision on December 12, 1997, granting Claimant's reinstatement petition. In rendering his decision, the WCJ accepted the testimony

---

**2.** Claimant acknowledged that this confrontation was a shouting match and not a physical confrontation.

**3.** Such factors included Claimant's history of smoking and high blood pressure and his

mother's history of high cholesterol. Dr. Hurwitz did, however, note that Claimant quit smoking in 1973, but further noted that he had a significant history of smoking prior to that time.

of Claimant and Dr. Luderer as credible and convincing and specifically rejected the testimony of Dr. Hurwitz. In his decision, the WCJ found that Claimant experienced periodic episodes of angina during the months of August and September of 1995, but continued to work. The WCJ found that Claimant experienced a more serious episode of angina on October 4, 1995, after a verbal confrontation with a client, followed by a second heart attack on October 11, 1995, in the course and scope of his employment with Employer.

Additionally, the WCJ found that Claimant's disability beginning on October 12, 1995, results from both of his heart attacks, but his initial heart attack on August 24, 1994, remained a substantial factor contributing to the causation of his ongoing total disability. Interestingly, however, the WCJ further found that Claimant's second heart attack resulted directly from his pre-existing coronary artery disease and noted that the record is devoid of an unequivocal expert opinion indicating that this second heart attack was causally related to Claimant's activities at work.

Employer immediately filed an appeal with the Board and also filed a petition for supersedeas. Nevertheless, on December 31, 1997, as Employer's petition for supersedeas was pending before the Board, Employer's workers' compensation insurance carrier proceeded to issue two checks. The first check, in the amount of $28,533.05, was sent to Claimant, and the second check, in the amount of $3,219.91, was sent to Claimant's counsel. The checks were sent in accordance with the WCJ's

December 12, 1997, decision and order. By order of the Board dated January 5, 1998, Employer's petition for supersedeas was granted. Employer then requested that Claimant and Claimant's counsel return the checks, but they refused.

Employer thereafter filed a petition to review compensation benefits, alleging that its workers' compensation insurance carrier inadvertently issued the checks and asking the WCJ to direct Claimant and his counsel to return the checks. Claimant filed an answer admitting the factual allegations of Employer's petition but averring that the checks had been cashed and that there was no Pennsylvania law supporting Employer's position. A hearing was held before the WCJ but no testimony was presented as the parties stipulated to the facts contained in the pleadings.

Ultimately, the WCJ issued a decision denying and dismissing Employer's review petition. The WCJ concluded that there would be no overpayments occurring, unless the Board reversed or modified his December 12, 1997, decision and order. In addition, the WCJ concluded that, in the event that Employer would ultimately prevail before the Board in this matter, it would be entitled to a full reimbursement from the Supersedeas Fund. Employer again filed an appeal with the Board. The Board consolidated this appeal with Employer's prior appeal from the WCJ's December 12, 1997, decision. Eventually, the Board issued a decision affirming both decisions of the WCJ.[4]

On appeal to this Court,[5] Employer argues that the Board erred in affirming the decision of the WCJ granting Claimant's

4. With respect to the WCJ's finding that Claimant's second heart attack resulted directly from his pre-existing coronary artery disease and the record lacked an unequivocal expert opinion causally relating said heart attack to Claimant's activities at work, the Board noted that this finding was initially confusing. However, the Board concluded that this finding was not inconsistent with a grant of Claimant's reinstatement petition when the WCJ's decision was read as a whole.

5. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America )*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

reinstatement petition, as said decision is not supported by substantial, competent evidence. More specifically, Employer argues that the testimony of Dr. Luderer does not constitute sufficient unequivocal medical evidence establishing Claimant's ongoing disability or the causal connection between Claimant's second heart attack and his activities at work. We disagree.

■ Employer's argument in this regard is misplaced. A suspension is warranted under the Pennsylvania Workers' Compensation Act (Act)[6] where a claimant has a residual physical impairment attributable to a work-related injury but is receiving wages equal to or in excess of what the claimant had earned in his pre-injury job. *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.)*, 651 A.2d 1178 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995). Although the employer remains liable for the consequences of the work-related injury, there is no longer any "disability," i.e., loss of earning power, attributable to the work-related injury. *Id.*

■ A claimant seeking reinstatement following a suspension of benefits must prove that: (1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990). However, "[a] claimant does not have to re-establish the causal relationship, i.e., job relatedness, of the injury." *Van Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Company)*, 683 A.2d 342, 345 (Pa.Cmwlth.1996).

■ "In such suspension situations, the causal connection between the original work-related injury and the disability which gave rise to compensation is *presumed.*" *Pieper*, 526 Pa. at 33, 584 A.2d at 305 (emphasis in original). Moreover, a claimant is not required to produce unequivocal medical evidence to establish continuing disability, but rather, the testimony of the claimant alone can be sufficient to satisfy his burden of establishing that his disability continues. *See Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994).

In this case, Employer does not dispute that Claimant satisfied the first prong of *Pieper*, i.e., that through no fault of his own, his disability/earning power was again adversely affected by his original work injury. Instead, Employer argues that Claimant failed to satisfy the second prong of *Pieper*, i.e., that the disability which gave rise to his original claim continues. In this regard, Employer argues that Claimant was required to establish ongoing disability through the presentation of unequivocal medical testimony.[7] However, this requirement was specifically rejected in *Latta.*

In order to meet the second prong of *Pieper*, Claimant testified on his own behalf. Claimant testified that, upon his return to work, he would occasionally encounter shortness of breath and chest pains. (R.R. at 140a, 152a). Claimant indicated that these chest pains became progressively worse during the months of August and September of 1995. (R.R. at 140a, 149a). Additionally, Claimant indicated that he suffered a second heart attack on October 11, 1995, approximately one week after being involved in a heated confrontation with a client. (R.R. at 141a, 152a).

In further support of this second prong, Claimant presented the testimony of Dr.

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

7. Employer cites to *Galbreath v. Workmen's Compensation Appeal Board (Gordon)*, 156 Pa. Cmwlth. 378, 627 A.2d 287 (1993), *petition for allowance of appeal denied*, 537 Pa. 643, 644 A.2d 165 (1994), in support of this argument.

Luderer. Dr. Luderer confirmed that, in the course of his treatment of Claimant following his return to work, Claimant indicated to him that he was occasionally experiencing some angina and shortness of breath. (R.R. at 165a, 171a–172a). Dr. Luderer opined that Claimant's first heart attack was clearly causally related to the confrontation at work, whereas work-related stress, coupled with a damaged myocardium from his first heart attack, was a contributing factor to his second heart attack. (R.R. at 167a–168a, 175a).

 More specifically, Dr. Luderer indicated that Claimant's first heart attack caused significant left ventricular dysfunction. (R.R. at 169a). Dr. Luderer opined that Claimant was "really totally disabled" from his first heart attack but went back to work and "obviously ... couldn't take it." *Id.* Further, Dr. Luderer opined that Claimant was presently permanently and totally disabled. (R.R. at 168a–169a). The WCJ accepted the testimony of Claimant and Dr. Luderer as credible and convincing. This testimony constitutes substantial, competent evidence in support of the WCJ's decision granting Claimant's reinstatement. Thus, we cannot say that the Board erred in affirming said decision.

Accordingly, the order of the Board is affirmed.[8]

## ORDER

AND NOW, this 13th day of July, 2000, the order of the Workers' Compensation Appeal Board is affirmed.

---

8. We note that Employer raises an additional argument its brief to the effect that the Board *erred in affirming the decision of the WCJ* denying and dismissing its review petition. However, as we determined above that the Board properly affirmed the decision of the WCJ granting Claimant's reinstatement petition, we believe that any issue regarding Employer's review petition and the payment of benefits to Claimant has been rendered moot.