Stephen BAILEY, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (US AIRWAYS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 6, 2004.

Decided Jan. 6, 2005.

---

Jenifer Dana Miller, Philadelphia, for petitioner.

Jennifer Casey Maier, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

Stephen Bailey (Bailey) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming Workers' Compensation Judge Carl Lorine's (WCJ Lorine) denial of Bailey's reinstatement petition. We affirm the Board.

Bailey sustained a work-related injury to his left knee on October 20, 1999. US Airways (USAir) issued a notice of compensation payable and Bailey began receiving benefits pursuant to the Provisions of the Pennsylvania Workers' Compensation Act (Act)[1] as of January 18, 2000.

In response to a review petition and a penalty petition filed by Bailey, USAir agreed to pay partial disability benefits from October 20, 1999. USAir filed a petition to terminate/suspend benefits on October 4, 2000, alleging that Bailey was fully recovered and capable of returning to work without restrictions. Bailey returned to work with USAir on October 10, 2000 in a different position in which he packed soda carts for international flights.

At the hearing on USAir's petition, WCJ Makin determined that USAir had not sustained its burden of proving that Bailey was fully recovered and capable of returning to his pre-injury position but that Bailey had sustained his burden of proving that he returned to work with restrictions and still suffered from limitations due to his work injury. WCJ Makin suspended benefits as of October 10, 2000, the date of Bailey's return to work.

On January 7, 2002, Bailey filed a reinstatement petition requesting partial disability benefits as of March 12, 2001, alleging that he had routinely worked overtime prior to his injury but that he could no longer because of the pain in his knee. He testified that when he tried to work overtime he experienced much more pain and that it was impossible for him to return to the level of work he had been capable of prior to his knee injury.

Bailey offered the deposition testimony of Dr. Paul Liebert in support of his reinstatement petition, the same deposition testimony that was offered at the hearing before WCJ Makin. In that deposition Dr. Liebert had testified that Bailey had not recovered from his work-related injury and that his prognosis for a full recovery was poor. He opined that Bailey would always require work restrictions in his use of the knee and that he restricted Bailey to no more than forty hours of work per week.

USAir presented the deposition testimony of Dr. Eugene Elia taken following his examination of Bailey on November 6, 2002. Dr. Elia opined that Bailey was not in need of ongoing restrictions and could perform his job requirements. However, Dr. Elia did find that Bailey had discomfort in his knee that would continue to progress throughout the day.

WCJ Lorine found as follows in his Findings of Fact 8 and 9:

8. In arriving at her decision of October 18, 2001 Judge Makin had before her, and obviously considered, the May 8, 2001 deposition testimony of Dr. Paul L. Liebert. Based on all evidence of record Judge Makin, as noted in Findings of Fact #3 supra, found in part,

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

that 'when he (Claimant) returned to work (October, 2000) it was at full duty with overtime because Claimant was trying to save some of his [knee] for [his] own personal activities he stopped working overtime." Said another way, Judge Makin found that the Claimant was capable of working overtime when he returned to work in October, 2000, but at some point thereafter *he elected* to stop working overtime for reasons not related to his work injury. Subsumed in the aforesaid finding by Judge Makin is her rejection of any testimony from Dr. Liebert that the Claimant was not capable of working overtime because of the work injury.

9. In the matter before this Judge the Claimant, *based in part on the same May 8, 2001 testimony of Dr. Liebert,* is asking this Judge to find that on or after March 12, 2001 his loss in earnings is no longer due to *his election not to work overtime for personal reasons,* but due to residuals of the work injury. This Judge believes that the Claimant cannot meet his burden under the present Petition without current medical testimony showing à change in his work-related condition. This he did not do and, thus, his Reinstatement Petition must be dismissed.

WCJ Lorine, considering both the testimony presented to WCJ Makin and the subsequent testimony of Dr. Elia, based on an examination done one year later, denied Bailey's reinstatement petition upon finding that he had failed to present medical evidence that his work-related condition had changed since the October 18, 2001, decision of WCJ Makin. Bailey appealed to the Board.

■ The Board concluded that Bailey had not carried his burden of showing that his condition had changed because he offered only the medical testimony introduced in a prior proceeding and USAir had offered new medical testimony that it had not worsened and had in fact improved. The Board determined that it was proper for WCJ Lorine to find as a matter of law that Bailey's condition had not changed. This appeal followed.[2]

■ The questions we are asked to consider are whether WCJ Lorine applied the proper burden of proof to Bailey's petition for reinstatement and whether WCJ Lorine or the Board misstated the findings of WCJ Makin.

■ Bailey's reinstatement petition requested reinstatement following a suspension of benefits as WCJ Makin concluded that Bailey had returned to work with restrictions and suffered from limitations due to a work-related injury. A claimant requesting reinstatement following a suspension of benefits must establish that:

(1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and

(2) the disability which gave rise to the original injury continues.

2. Our standard of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle),* 703 A.2d 558 (Pa.Cmwlth. 1997). We also acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v.*

*Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 203, 812 A.2d 478, 487 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court."

*Hinton v. Workers' Compensation Appeal Board (City of Philadelphia)*, 787 A.2d 453, 456 (Pa.Cmwlth.2001). The causal connection between the work-related injury and the disability that gives rise to compensation is presumed. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). "Moreover, a claimant is not required to produce unequivocal medical evidence to establish continuing disability, but rather, the testimony of the claimant alone can be sufficient to satisfy his burden of establishing that his disability continues." *Abraxas Foundation, Inc. v. Workers' Compensation Appeal Board (Datemasch)*, 755 A.2d 739, 743 (Pa.Cmwlth.2000).

Bailey, by his own words, fails to meet the first prong of the test enunciated in *Hinton*. WCJ Lorine, in reviewing the findings of WCJ Makin, quoted above, noted that WCJ Makin found that Bailey *"elected"* not to work overtime and that he could not demonstrate that his loss of earning power was "no longer due to his *election not to work overtime for personal reasons ...*" unless he presented current medical testimony to support such a conclusion. As noted above, Bailey failed to present current medical testimony, relying instead on the testimony of Dr. Liebert from a previous hearing that was countered by USAir's subsequent testimony of Dr. Elia. We conclude that WCJ Lorine applied the proper burden of proof in considering Bailey's petition.

■ Bailey further alleges that both the Board and WCJ Lorine erred in interpreting the opinion of WCJ Makin and in support of that position offers the fact that WCJ Makin accepted the testimony of Bailey's medical expert, Dr. Liebert, and rejected that testimony of USAir's medical expert, Dr. Rubinstein. In doing so, Bailey ignores the testimony of USAir's medical expert, Dr. Elia, who examined Bailey on November 6, 2002, fully one year after WCJ Makin rendered her decision. Dr. Elia opined that Bailey was fully recovered and could return to work without restriction. In response, Bailey offered only the testimony of Dr. Liebert that had been offered before WCJ Makin. Thus, in rejecting Dr. Liebert's testimony, WCJ Lorine was not misinterpreting WCJ Makin's findings but was making an independent finding based upon newly introduced expert medical evidence of Bailey's physical condition.

Bailey also alleges that WCJ Lorine misstated the findings made by WCJ Makin in regard to his own testimony. In his findings of fact WCJ Lorine notes that WCJ Makin found that "[b]ecause Bailey was 'trying to save some of his knee for [his] own personal activities,' he stopped working overtime." (R.R. at 35a). Bailey claims that WCJ Lorine erred when he characterized this testimony as Bailey's *"election not to work overtime for personal reasons."* (WCJ Lorine's Finding of Fact No. 9). Our review of the record convinces us that neither WCJ Lorine nor the Board erred in interpreting WCJ Makin's finding or in interpreting Bailey's testimony and WCJ Makin's finding that Bailey elected not to work overtime is supported by substantial evidence of record.

Accordingly, the order of the Board in this matter is affirmed.

### ORDER

AND NOW, this 6th day of January 2005, the order of the Workers' Compensation Appeal Board in this matter is AFFIRMED.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Contrary to the majority opinion, I believe that Workers' Compensation Judge Carl Lorine (WCJ

Lorine) committed clear error in holding Stephen Bailey (Claimant) to an elevated burden of proof in his reinstatement petition and, as a consequence, also failed to make necessary credibility determinations.

In this case, Claimant sustained a work-related injury to his left knee on October 20, 1999, and received disability benefits pursuant to a notice of compensation payable issued by U.S. Airways (Employer). Claimant returned to work for Employer in a different service position on October 10, 2000.

On October 4, 2000, Employer filed a petition to terminate/suspend Claimant's benefits. The matter went before WCJ Sarah Makin, who determined that Employer did not sustain its burden of proving that Claimant was fully recovered and capable of returning to his pre-injury position. WCJ Makin credited both Claimant and Claimant's medical expert, Paul Liebert, M.D., who released Claimant to work but limited Claimant to a forty hour work week and also imposed restrictions regarding bending, kneeling, squatting and carrying. Based on this credible testimony, WCJ Makin determined that Claimant still suffered limitations from his work injury when he returned to work, and, accordingly, WCJ Makin suspended Claimant's benefits as of October 10, 2000.

On January 7, 2002, Claimant filed a reinstatement petition, alleging that he was entitled to partial disability because, although he routinely worked overtime prior to his knee injury, he could no longer do so due to pain in his knee. At hearings before WCJ Lorine, Claimant explained that when he tried to continue his practice of working overtime upon his return to work, the pain he experienced forced him to stop. In support of his reinstatement petition, Claimant also offered the deposition testimony of Dr. Liebert that had

been offered at the hearing before WCJ Makin.

Employer defended against the reinstatement petition by presenting the deposition testimony of Dr. Eugene Elia, M.D. Dr. Elia examined Claimant on November 6, 2002, and opined that Claimant had fully recovered from his work injury as of that date. Dr. Elia did find that Claimant had discomfort in his knee that would continue to progress throughout the day; however, Dr. Elia attributed any restrictions on Claimant's overtime to a degenerative condition in Claimant's knee.

Without making any credibility determinations, WCJ Lorine concluded that Claimant's reinstatement petition must be denied, as a matter of law, because he failed to present medical evidence that his work-related condition had changed since the October 18, 2001, decision of WCJ Makin. In this regard, WCJ Lorine found:

8. In arriving at her decision of October 18, 2001 Judge Makin had before her, and obviously considered, the May 8, 2001 deposition testimony of Dr. Paul L. Liebert. Based on all evidence of record Judge Makin, as noted in Findings of Fact # 3 supra, found in part, that 'when he (Claimant) returned to work (October, 2000) it was at full duty with overtime[;] because Claimant was trying to save some of his [knee] for [his] own personal activities he stopped working overtime." Said another way, Judge Makin found that the Claimant was capable of working overtime when he returned to work in October, 2000, but at some point thereafter *he elected* to stop working overtime for reasons not related to his work injury. Subsumed in the aforesaid finding by Judge Makin is her rejection of any testimony from Dr. Liebert that the Claimant was not capa-

ble of working overtime because of the work injury.

9. In the matter before this Judge the Claimant, *based in part on the same May 8, 2001 testimony of Dr. Liebert,* is asking this Judge to find that on or after March 12, 2001 his loss in earnings is no longer due to *his election not to work overtime for personal reasons,* but due to residuals of the work injury. This Judge believes that the Claimant cannot meet his burden under the present Petition without current medical testimony showing a change in his work-related condition. This he did not do and, thus, his Reinstatement Petition must be dismissed.

(R.R. at 136a) (emphasis in original).

In affirming WCJ Lorine, the Workers' Compensation Appeal Board (Board) agreed that Claimant had the burden of proving that his condition had changed and that Claimant could not meet this burden with Dr. Liebert's testimony, which had been introduced and rejected in a prior proceeding.[1]

Before this court, Claimant argues that WCJ Lorine erred by holding Claimant to the burden of proof required for reinstatement following termination of benefits, as opposed to the burden of proof required following a suspension of benefits. Claimant also alleges that the Board and WCJ Lorine erred by misstating the findings of WCJ Makin. I would agree with Claimant.

Because WCJ Makin suspended Claimant's benefits and expressly denied Employer's petition to terminate those benefits, Claimant sought reinstatement of benefits following a suspension, not a termination. As the majority correctly states, a claimant requesting reinstatement following a suspension of benefits must establish that: (1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claim continues. *Hinton v. Workers' Compensation Appeal Board (City of Philadelphia),* 787 A.2d 453 (Pa.Cmwlth. 2001). The causal connection between the work-related injury and the disability giving rise to compensation is presumed. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990). "Moreover, a claimant is not required to produce unequivocal medical evidence to establish continuing disability, but rather, the testimony of the claimant alone can be sufficient to satisfy his burden of establishing that his disability continues." *Abraxas Foundation, Inc., v. Workers' Compensation Appeal Board (Datemasch),* 755 A.2d 739, 743 (Pa.Cmwlth. 2000).

Here, WCJ Lorine found that Claimant failed to meet his burden on the reinstatement petition because he did not present "current medical testimony showing a change in his work-related condition." (R.R. 136a.) I believe this statement clearly was erroneous. As noted, in requesting a reinstatement of benefits *following suspension,* a claimant does not have to establish a change in his medical condition, and he can meet his burden based solely on his own testimony, without presenting *any* medical testimony.[2]

---

1. I note that both WCJ Lorine and the Board assert that WCJ Makin *rejected* Dr. Liebert's testimony; this is incorrect. To the contrary, WCJ Makin found Dr. Liebert's testimony more credible and persuasive than the testimony of Employer's medical expert and accepted Dr. Liebert's testimony as fact. (WCJ Makin's Findings of Fact. Nos. 11–12.)

2. The burden of proof required to establish reinstatement of benefits following a termination of benefits is considerably greater. A

The majority, however, holds that WCJ Lorine imposed the proper burden of proof on Claimant. In doing so, the majority first states that "[Claimant] by his own words, fails to meet the first prong of the test enunciated in *Hinton.*" (Majority op. at 323.) As support for this statement, the majority notes that WCJ Makin found that Claimant *"elected"* not to work overtime." (*Id.*) The majority thus agrees with WCJ Lorine that Claimant "could not demonstrate that his loss of earning power was 'no longer due to his *election not to work overtime for personal reasons* ...' unless he presented current medical testimony to support such a conclusion." (*Id.*, emphasis in original.) Although attributed directly to WCJ Makin, I believe the "finding" referred to by the majority actually represents WCJ Lorine's misstatement of WCJ Makin's prior finding.

In her actual finding, WCJ Makin attributes the following quote to Claimant: "[b]ecause Claimant was 'trying to save some of this knee for [his] own personal activities,' he stopped working overtime." (R.R. at 35a). WCJ Lorine *rephrased* the quote in a way that attributed blame to Claimant for his failure to work overtime, concluding that this quote meant that Claimant was capable of working overtime, but *elected* not to due to personal reasons. Now, like WCJ Lorine, the majority insists that this interpretation of the quote accurately represents WCJ Makin's intent.

However, as noted by Claimant in his brief, the words "saving some of his knee" could more reasonably be interpreted to mean that *due to the work injury,* Claimant could not work overtime and lead a normal personal life. In fact, I believe that this is a far more valid interpretation of WCJ Makin's finding.[3]

The majority also contends that Claimant's arguments ignore the testimony of Dr. Elia, who, after examining Claimant on November 6, 2002, opined that Claimant was fully recovered and could return to work without restrictions. *If* WCJ Lorine had credited Dr. Elia's testimony and rejected the contrary testimony of Claimant and Dr. Liebert in regard to Claimant's full recovery, this court would be forced to affirm the denial of Claimant's reinstatement petition based on Claimant's failure to satisfy either prong of the burden enunciated in *Hinton.* However, WCJ Lorine made no credibility determinations; instead, he denied reinstatement based *solely* on Claimant's failure to satisfy a heightened burden of proof that was incorrectly imposed.

Because I agree that WCJ Lorine applied an improper burden of proof on Claimant when making his findings of fact, I would vacate and remand this action to the WCJ to consider all the testimony of record, including the testimony of Claim-

---

claimant requesting reinstatement of benefits *following termination* must establish that: (1) his disability has increased or recurred; and (2) his physical condition has actually changed. *Pieper.* In such a case, a claimant must present unequivocal medical evidence to establish a causal connection between the original work-related injury and the disability alleged; it is not presumed. *Id.*

3. Contrary to the majority, I disagree that the interpretation by WCJ Lorine is established by substantial evidence of record. (Majority op. at 323.) WCJ Makin found Dr. Liebert's testi-

mony to be credible, and Dr. Liebert testified that he had restricted Claimant to no more than forty hours of work per week because of his left knee injury. (R.R. at 47a, 54a.) WCJ Makin also determined that Claimant returned to work with restrictions and that Claimant still suffered limitations from his work injury. As such, I believe that WCJ Lorine's rephrasing of a quote by Claimant, which he interpreted and then attributed to WCJ Makin, concluding that WCJ Makin had made a finding that Claimant could work overtime but elected not to, constituted error.

ant and Dr. Liebert, and to apply the *appropriate burden of proof.*

Judge SMITH–RIBNER and Judge PELLEGRINI join in this dissent.